In the Matter of ROYAL D'IBERVILLE CORPORATION, Debtor and Debtor-In-Possession.

The JEFFERSON BANK, a Zulli Silver Company, et al., Royal D'Iberville Corporation, Appellants,

v.

KIMBROUGH INVESTMENT COMPANY, Appellee.

Civ. A. No. S81–0031(C).

United States District Court, S. D. Mississippi, S. D.

March 4, 1981.

JUDGMENT

COX, District Judge.

This is an appeal to this Court from a decision of the bankruptcy court approving the foreclosure by the appellee of its deed of trust on all of the property of the debtor corporation. The unsecured creditors of the bankrupt amount to more than $2,600,000. There are more than two million dollars of unsecured debts against this bankrupt company. The bankrupt has lost over a million dollars since it has operated the hotel on the

beach at Biloxi, Mississippi. Mr. John Neyrey represents the Production Oil Company likewise in bankruptcy and holding the largest unsecured claim against this bankrupt. Mr. Neyrey's wife is one of the principal tenants of the bankrupt but she pays no rent.

Kimbrough Investment Company (Kimbrough) sold the debtor this Sheraton Hotel in Biloxi with its contents and accepted as a partial payment on the purchase price the note for $4,250,000 due on April 10, 1980 with interest at 10% payable monthly secured by a first deed of trust and vendor's lien on the property. That agreement was modified by a reduction of the indebtedness to $3,950,000 on April 10, 1980 with interest at 15% due April 10, 1981. No interest has been paid on this indebtedness since June 1980. In October 1980, Kimbrough commenced foreclosure set for October 27 for nonpayment of interest on $3,950,000, a $39,500 note, ad valorem tax escrows, insurance premiums on fire and casualty insurance on the hotel and lay charges. The debtor on October 2, 1980 entered a contract to sell the hotel to an impecunious buyer, secured by an undeposited check of the proposed buyer in the hands of the proposed buyer's attorney. On October 24, 1980, the debtor filed its petition under Chapter XI of the Bankruptcy Act as a debtor-in-possession showing in excess of two million dollars of unsecured debts. The foreclosure was thus stopped.

On November 10, 1980, a hearing was held by the bankruptcy court on Kimbrough's motion for adequate protection and relief from the stay. The Court gave no relief to Kimbrough but continued Kimbrough's motions until December 10, 1980. Nothing was done toward the sale of the property. On December 10, 1980, the bankrupt court entered an agreed order finding that Kimbrough was entitled to have adequate protection which could be either an increase in Beachcomber's earnest money for $275,000 on which Kimbrough would have a lien, or by paying Kimbrough its monthly interest of $49,750 for the months of December, January and February 1981, or the Court would re-consider the matter on December 29, 1980. Nothing was done.

On December 29, 1980, a hearing was held in which the debtor contended that Kimbrough was adequately protected by an equity cushion in the value of the hotel as to the value of which both parties offered testimony. Kimbrough's indebtedness was now increased to $4,350,870.60, plus attorney's fees, trustees' fees and foreclosure cost. The bankruptcy court then ordered the debtor to pay Kimbrough $150,000 on January 13, 1981, failing in which the automatic stay would be terminated. No payments were made so Kimbrough recommenced foreclosure.

On January 19, 1981, a hearing was held on the motion of The Jefferson Bank and other creditors and the debtor for reconsideration of the bankruptcy court's order of December 29, 1980 and for a stay pending appeal. The bankruptcy court overruled the motion for reconsideration but granted a stay from its order of December 29 pending an appeal to this Court upon posting of a bond for benefit of Kimbrough in the amount of $4,250,000. Said bond was never given.

On January 26, 1981, the bankruptcy court 10 B.R. 37, entered its Findings of Fact that the fair market value of Kimbrough's securities was $4,250,000, and that the debtor and its unsecured creditors had no equity in the hotel property and that Kimbrough's indebtedness continued to mount at the rate of $49,375 per month in addition to ad valorem taxes, insurance and lay charges; and that an effective reorganization was not obtainable by the debtor, and that Kimbrough should not be delayed further in resorting to its collateral.

On February 5, 1981, another judge of this Court again terminated its foreclosure proceeding without a bond pending a hearing by this Court. The 1980 ad valorem taxes on the hotel are unpaid, and nothing has been paid into the escrow account with Kimbrough since June 1980. The debtor was granted permission to borrow money and give a second deed of trust on the hotel property with which to pay the $150,000 in

which The Jefferson Bank refused to participate. The record shows that C. DeWitt Coffman directed the management of approximately 120 hotels in different groups and chains and had represented both buyers and sellers in 80 to 100 real estate transactions involving hotels. Mr. Coffman was definitely and convincingly qualified to give the bankruptcy court his idea of the value of the Royal D'Iberville Corporation bankrupt property. He fixed the value of appellee's security at $4,250,000. Mr. Jack Mann, a very able and well qualified realtor and appraiser, said that in his opinion the value of this property was $9,530,000. Mr. Mann was obviously seeking to assist the Beachcomber Development Company to buy this property with somebody else's security. Mr. Mann assumed facts and important figures which did not exist but were actually contrary to established facts. He considered converting the hotel into a condominium, but his values were predicated upon an unrealistic fixation of value contrary to actual facts.

Kimbrough had a perfectly valid deed of trust on the hotel and its furnishings. That deed of trust was promptly filed for record and recorded in the land records of Harrison County, Mississippi as notice to everybody of Kimbrough's rights in this property. The appellants complain that no committee was appointed and that they were not advised of the Court's action under the provisions of the bankruptcy law. The bankruptcy judge heard the case and on January 26, 1981 entered his opinion as Findings of Fact and Conclusions of Law which clearly authorized and justified the course which he pursued. It is regretable that this large number of unsecured creditors must see their claims swept out by this foreclosure, but the Court does not operate on sympathy, or prejudice, or any other similar or dissimilar emotion.

The appellants seek to disparage the findings and conclusions of the Referee by the citation of *United States v. United States Gypsum Company*, 333 U.S. 364, 68 S.Ct. 525, 542, 92 L.Ed. 746 where the Court said in a price fixing suit under the Sherman Act: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

With all deference to able counsel on both sides, this Court is left with the firm conviction that the Referee has done everything within his power to afford the appellants an opportunity to save this property without undue hardship, or undue disadvantage to the appellee. This Court is guided and controlled on this appeal from this bankruptcy court by Rule 810 which provides: "Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses."

This Court is of the firm conviction that the Findings and Conclusions of the Referee are not clearly erroneous but are imminently correct and must be and are approved; and his Findings and Conclusions are affirmed by this Court, and the appellants' appeal is without merit and is dismissed with prejudice at their cost to be taxed by the Clerk of this Court and for which proper process may issue.